1

2

3

4

5        **UNITED STATES DISTRICT COURT**

6        **EASTERN DISTRICT OF WASHINGTON**

7    PIETER RUMBURG,                    | No. 1:15-CV-03098-MKD

8                    Plaintiff,         | ORDER GRANTING PLAINTIFF'S
                                         | MOTION FOR SUMMARY
9          vs.                          | JUDGMENT AND DENYING
                                         | DEFENDANT'S MOTION FOR
10   CAROLYN W. COLVIN,                 | SUMMARY JUDGMENT

11   Acting Commissioner of Social Security, | ECF Nos. 16, 17

12                   Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14   judgment.  ECF Nos. 16, 17.  The parties consented to proceed before a Magistrate

15   Judge.  ECF No. 4.  The Court, having reviewed the administrative record and the

16   parties' briefing, is fully informed.  For the reasons discussed below, the Court

17   grants Plaintiff's motion (ECF No. 16) and denies Defendant's motion (ECF No.

18   17).

19

20

**JURISDICTION**

1   The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

2   **STANDARD OF REVIEW**

3

4   A district court's review of a final decision of the Commissioner of Social

5   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

6   limited; the Commissioner's decision will be disturbed "only if it is not supported

7   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

8   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

9   reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

10  (quotation and citation omitted).  Stated differently, substantial evidence equates to

11  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

12  citation omitted).  In determining whether the standard has been satisfied, a

13  reviewing court must consider the entire record as a whole rather than searching

14  for supporting evidence in isolation. *Id.*

15  In reviewing a denial of benefits, a district court may not substitute its

16  judgment for that of the Commissioner.  If the evidence in the record "is

17  susceptible to more than one rational interpretation, [the court] must uphold the

18  ALJ's findings if they are supported by inferences reasonably drawn from the

19  record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

20  court "may not reverse an ALJ's decision on account of an error that is harmless."

1  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

2  nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

3  party appealing the ALJ's decision generally bears the burden of establishing that

4  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

5  **FIVE-STEP EVALUATION PROCESS**

6  A claimant must satisfy two conditions to be considered "disabled" within

7  the meaning of the Social Security Act.  First, the claimant must be "unable to

8  engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of not less than twelve

11  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

12  "of such severity that he is not only unable to do his previous work[,] but cannot,

13  considering his age, education, and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy."  42 U.S.C. §

15  1382c(a)(3)(B).

16  The Commissioner has established a five-step sequential analysis to

17  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

18  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

19  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

20

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on November 2, 2010, alleging a disability onset date of July 15, 2010.  Tr. 20.[1]  The application was denied initially, Tr. 88-91, and on reconsideration, Tr. 101-02.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on October 23, 2013.  Tr. 33-70.  On December 2, 2013, the ALJ denied Plaintiff's claim.  Tr. 17-32.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 2, 2010, the date Plaintiff applied for benefits.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: gastritis, migraine headaches, and major depressive disorder.  Tr. 22.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 23.  The ALJ

---

[1] The ALJ's decision listed the application date as November 2, 2010.  Tr. 20. However, the application in the record appears to indicate it was filed November 3, 2010.  Tr. 175.  The discrepancy of the dates does not impact the Court's analysis.

then concluded that Plaintiff has the RFC to perform light work, with the following non-exertional limitations: "he is limited to simple, repetitive tasks and he is limited to superficial contact with the public." Tr. 25.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a paper carrier.  Tr. 28.  The ALJ did not proceed to step five given the findings at step four.  Tr. 28.  On the basis that he could perform past relevant work, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 28.

On April 9, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ properly weighed the medical opinion evidence; and

2.    Whether the ALJ reasonably determined that Plaintiff could perform past relevant work.

ECF No. 16 at 1.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

# DISCUSSION

## A.  Medical Opinion Evidence

Plaintiff faults the ALJ for discrediting the medical opinions of treating physician Richard Vaughan, M.D.; examining doctor Aaron Burdge, Ph.D.; and therapist Leslie Thompson, M.A.  ECF No. 16 at 6-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31(9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

   *1. Dr. Vaughan*

   In August and September 2010, Dr. Vaughan examined Plaintiff and opined that Plaintiff's work function was impaired, but that the impairment would last

only two months.  Tr. 221-24.  Dr. Vaughan's treatment notes from that period list

the diagnosis as depression, note that the depression is worsening, and that the

prescribed medication is not working.  Tr. 223.  In August 2011, Dr. Vaughan

treated Plaintiff and noted that Plaintiff should be "off work up to 2 months for

treatment" for depression.  Tr. 276-78.  In December 2013, Dr. Vaughan generated

a medical report, in which he reaffirmed the prior diagnosis of depression and

opined that "it is more probable than not that [Plaintiff] would miss some work due

to medical impairments," but indicated that the amount of work missed would be

"unpredictable until [his] depression [is] under control."  Tr. 359-60.  The ALJ

assigned "little weight to [the] opinion of treating physician Dr. Vaughan" and

discussed reasons for rejecting Dr. Vaughan's August 2010 opinion, but not the

subsequent opinions.  Tr. 27.

Plaintiff contends that the ALJ failed to identify specific and legitimate

reasons for discounting Dr. Vaughan's treating opinions.  ECF No. 16 at 8.[2]

The ALJ identified two reasons for discounting Dr. Vaughan's 2010

opinion.  First, the ALJ found that it was vague and conflicting.  Tr. 27.  A medical

---

[2] Neither party identified how Dr. Vaughan's opinion was contradicted.  However,

the Court will defer to Plaintiff's concession that the specific and legitimate

standard applies, instead of the clear and convincing standard.  ECF No. 16 at 8.

1  opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or

2  is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d

3  947, 957 (9th Cir. 2002); *see also Johnson v. Chater,* 87 F.3d 1015, 1018 (8th Cir.

4  1996) (Where a treating physician's opinion is itself inconsistent, it should be

5  accorded less deference).  Despite finding that Plaintiff's work function was

6  impaired, Dr. Vaughan noted no impairments in his report.  Tr. 221.  Dr. Vaughan

7  found that Plaintiff's condition was stable, that Plaintiff could stand for eight hours

8  in an eight hour day, sit for eight hours in an eight hour day, had no limitations or

9  restrictions as to lifting, postural restrictions, gross or fine motor skills, or as to

10  environmental factors.  Tr. 222.  The ALJ reasonably concluded that Dr.

11  Vaughan's unexplained assessment of an inability to work is inconsistent with Dr.

12  Vaughan's other conclusions regarding Plaintiff's normal functioning.

13       Second, the ALJ noted that the restrictions in the 2010 opinion were limited

14  to a two-month period.  Temporary limitations are not sufficient to meet the

15  durational requirement for a finding of disability.  *See* 20 C.F.R. 416.905(a)

16  (claimant must have impairment expected to last for a continuous period of not less

17  than 12 months); *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1165

18  (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse

19  from work was not indicative of "claimant's long term functioning.").

20

The ALJ did not discuss the two subsequent (the August 2011 or the December 2013) medical opinions.  *See* Tr. 27.  The opinions of examining physicians and psychologists must be considered by the ALJ.  *See* 20 C.F.R. § 404.1527; *Lester*, 81 F.3d at 830.  As Defendant notes, reasons may exist in the record to justify rejecting Dr. Vaughan's opinions, ECF No. 17 at 7-8, however, the ALJ failed to address or reject these opinions.

The Court finds such error is not harmless.  The failure to address and reject Dr. Vaughan's two-week work absence opinion may have been harmless due to its temporal insufficiency to demonstrate disability; however, the limitation could be construed as consistent with the limitations assessed by Dr. Vaughan in 2010 and again in 2013, indicating the limitations may have occurred for a period sufficient to meet the durational requirement.  The error is compounded by the fact that the ALJ further failed to address the limitation set forth in the December 2013 report, that Plaintiff would likely miss an unpredictable amount of work due to his depression.  In this matter, the vocational expert testified that missing more than one day a month would likely lead to termination of employment.  Tr. 66-69.  In addition, Dr. Vaughan's opinions expressed in 2011 and in 2013 could be construed as consistent with the opinions expressed by Dr. Burdge and Ms. Thompson.

1    Finally, given that Dr. Vaughan is a treating physician whose opinions are

2  entitled to more weight, *Holohan*, 246 F.3d at 1201-02, the fact that the ALJ

3  rejected every treating and examining providers' assessment of limitations, and no

4  medical provider gave a contrary opinion that would support the RFC, the Court

5  finds such error is not harmless.  Further consideration of the medical record is

6  appropriate.

7    On remand, the ALJ should reassess the medical evidence, including all of

8  Dr. Vaughan's medical opinions, in light of the entire record.

9    *2.  Dr. Burdge*

10    In February 2012, Dr. Burdge performed a psychological evaluation, which

11  consisted of a diagnostic interview, behavioral observations, a mental status

12  examination, psychological testing, and a review of other treating and examining

13  providers' records.  Tr. 340-54.  Dr. Burdge diagnosed major depressive disorder,

14  recurrent, without psychotic features, and assessed several moderate and marked

15  limitations.  Tr. 345.  Dr. Burdge concluded that Plaintiff "is unlikely to function

16  adequately in a work setting until his psychological symptoms have been managed

17  more effectively," and further opined "a period of 12-14 months may likely be

18  sufficient to address his treatment needs at least moderately well, and help his [sic]

19  regain the necessary emotional functioning to resume fulltime work related

20

1    activities." Tr. 346. As with every other treating and examining provider, the ALJ

2    gave "little weight to the opinion of Dr. Burdge." Tr. 28.

3        Plaintiff contends that the ALJ failed to identify specific and legitimate

4    reasons for discounting Dr. Burdge's opinions. ECF No. 16 at 8.[3]

5        The ALJ cited two reasons for rejecting Dr. Burdge's opinion. First, the

6    ALJ discounted Dr. Burdge's opinion because it was contradictory. Tr. 28. A

7    medical opinion may be rejected by the ALJ if it is conclusory, contains

8    inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*,

9    _____

10    [3] Defendant contends that Dr. Burdge's opinion was contradicted, thus the ALJ

11    was required to identify specific and legitimate reasons to reject the medical

12    opinion. ECF No. 17 at 10. Specifically, Defendant contends "[s]tate agency

13    reviewing psychological consultant John Robinson, Ph.D., determined that

14    Plaintiff's depression was a severe impairment, but that the evidence was

15    insufficient to assess Plaintiff's claim of disability." ECF No. 17 at 10, n. 3 (citing

16    Tr. 84-85). The Court does not address whether a state agency reviewing

17    examiner's conclusion that the evidence was insufficient to assess any limitations

18    constitutes a contradiction of Dr. Burdge's assessment of limitations. Here,

19    Plaintiff has conceded that the specific and legitimate standard applies. ECF No.

20    16 at 12.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14

278 F.3d at 957.  Here, the ALJ simply stated that Dr. Burdge's conclusion that

Plaintiff "was unlikely to be able to function adequately in a work setting until his

psychological symptoms have been managed more effectively," is inherently

inconsistent with Dr. Burdge's assessment of the following limitations: a finding of

no limitation in his ability to understand, remember, and persist in simple tasks;

mild limitation in his ability to understand, remember, and follow complex

instructions; moderate limitation his ability to learn new tasks, ability to make

work related decisions, awareness of hazards and taking precautions, ability to

maintain appropriate behavior in a work setting, and in his ability to set realistic

goals and plan independently.  Tr. 28.  It is insufficient for the ALJ to reject the

opinion of a treating or examining physician by merely stating, without more, that

there is a lack of objective medical findings in the record to support or that it is

inconsistent with other evidence in the record.  *See Embrey v. Bowen*, 849 F.2d

418, 421 (9th Cir. 1988). The ALJ must do more than offer his conclusions.  He

must set forth his own interpretations and explain why they, rather than the

doctors', are correct.  *Id.* at 421–22.  Here, the ALJ made no effort to explain how

the assessed limitations were inherently inconsistent with Dr. Burdge's

conclusions.

Second, the ALJ found that "despite the claimant's alleged depression,

mental status exam findings are mostly within normal limits."  Tr. 28 (citing Tr.

346).  Here, as Defendant notes, the MSE notes reflect that Plaintiff appeared with appropriate grooming and hygiene, Tr. 343; he was "open, cooperative, and friendly," Tr. 343; he maintained appropriate eye contact, Tr. 344; his speech was normal and he was oriented to person, place, time and situation, Tr. 344; he was able to complete a three-step task and remember three objects immediately and upon delay, Tr. 344.  However, Dr. Burdge also indicated Plaintiff's mood was depressed, he was agitated, Tr. 344; with respect to concentration, he was unable to count backwards by 7, and the Trails Making A and B test showed moderate to severe impairment.  Tr. 345.  Given this record, the Court finds the results of the MSE are insufficient to be the sole justification to reject Dr. Burdge's medical opinions as to Plaintiff's functioning.

### 3.  *Ms. Thompson*

In 2010, Ms. Thompson evaluated Plaintiff, Tr. 328-39, and diagnosed "Major Depressive Disorder, Recurrent, Severe Without Psychotic Features."  Tr. 328.  She opined that given the Plaintiff's reported history, he was likely to find it difficult to work until his symptoms and cognitive impairments decreased, concentration improved, and his ability to interact with others improved.  Tr. 329.

In a check box form, she further assessed numerous marked and severe cognitive and social limitations.  Tr. 335.  The ALJ gave her opinions "little weight."  Tr. 28.

Because Ms. Thompson, a therapist, is an "other source," the ALJ was required to identify germane reasons for discounting her opinions.  *Molina*, 674 F.3d at 1108.

First, the ALJ noted that "Ms. Thompson is not an acceptable medical source[.]"  Tr. 28.  Although the ALJ may give less weight to Ms. Thompson's opinion because it is not from an "acceptable medical source;" SSR 06-3p, it would be error to reject her opinion *solely* on this basis.  To the extent any error occurred, it is harmless in this case because the ALJ gave additional reasons for rejecting Ms. Thompson's opinion.  *See Carmickle*, 533 F.3d at 1162-63.

Second, the ALJ found that "her opinion is inconsistent with the overall medical evidence of record."  Tr. 28.  An ALJ may discredit physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Ms. Thompsons' severe assessed limitations as to cognitive and social functioning, are inconsistent with other medical providers' examination reports.  As the ALJ noted "[o]n mental status examination, the claimant had good eye contact and psychomotor activity.  He displayed an appropriate mood and affect.  He was negative for anhedonia and he had no suicidal ideation."  Tr. 26 (citing Tr.

277).  In another evaluation, Plaintiff was able to recall three out of three objects immediately and after a delay, perform a three-step task, spell world forward and backward, and maintain a dialogue.  Tr. 24 (citing Tr. 344-45).

Moreover, the record supports a finding that Ms. Thompson's opinion is internally inconsistent and not supported by her clinical findings.  Specifically, the ALJ remarked that the "mental status exam findings are generally mild."  Tr. 28. For example, Ms. Thompson assessed a marked limitation in Plaintiff's ability to care for himself, including personal hygiene and appearance.  Tr. 335.  However, in the mental status exam, she found that his appearance was neat and his hygiene was adequate.  Tr. 338.  Ms. Thompson assessed severe impairments in Plaintiff's abilities to relate appropriately to co-workers and supervisors, and to interact appropriately in public contacts.  Tr. 335.  However, in the mental status exam, she observed that his posture was appropriate, his facial expressions were alert, his eye contact was normal, his body movements were normal, his quality of speech was clear, and his client/therapist relationship was cooperative.  Tr. 338.  Ms. Thompson assessed marked limitations in Plaintiff's ability to understand, remember and follow simple instructions.  Tr. 335.  However, in the mental status exam, she noted that his intellectual functioning was average, he was oriented in all spheres, his thought content was normal, and his stream of thought was normal. Tr. 339.  The ALJ's finding that Ms. Thompson's severe assessed limitations were

1   not supported by the medical record and not supported by the MSE observations

2   was a germane reason, supported by substantial evidence, to reject her opinion.

3        Finally, the ALJ noted that "it appears [Ms. Thompson] relied primarily on

4   the claimant's self-reports, which the record shows are unreliable."  Tr. 28.  A

5   medical opinion may be rejected if it is based on a claimant's subjective

6   complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144,

7   1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602

8   (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Here, the ALJ

9   found Plaintiff not credible, Tr. 22-23, 25-26, a finding that Plaintiff has not

10  challenged.  A review of the record supports the ALJ's conclusion that Ms.

11  Thompson relied to a large extent on Plaintiff's self-reported symptoms to form the

12  basis of her opinion.  Ms. Thompson prefaced her limitations by stating "[g]iven

13  the above reported history, [Plaintiff] is likely to find it difficult to work until his

14  symptoms and cognitive impairments decrease, his lack of concentration improves,

15  and his ability to interact with others improves, so as not to interfere with

16  functioning.  Tr. 329.  The "report history," she referenced consisted substantially

17  of Plaintiff's self-reports of his mental health symptoms.  Tr. 328-29.  Moreover, it

18  does not appear she reviewed any records or conducted any tests beyond an MSE,

19  Tr. 338-39.  The ALJ's reliance on Plaintiff's self-reports was a germane reason

20  for the ALJ to discount her opinion on this fact.

1    Here, the ALJ improperly rejected the opinions of Dr. Vaughan and Dr.

2 Burdge, by failing to cite specific and legitimate reasons supported by substantial

3 evidence.  Furthermore, it is noted that the ALJ rejected all psychological opinion

4 evidence offered by treating and examining sources in the record supported by

5 objective testing.  There were no contrary opinions offered at all, even by a

6 reviewing doctor.  Here, once the ALJ rejected all of the medical opinion evidence,

7 there is no opinion evidence supporting the RFC.  In this case, this is an inadequate

8 basis for the RFC.  As a result, the matter must be remanded for reconsideration of

9 the opinions and additional findings.

10   **B.  Substantial Gainful Activity**

11    The ALJ determined that the Plaintiff is not disabled because he "is capable

12 of performing past relevant work as a paper carrier."  Tr. 28.  Plaintiff challenges

13 this finding, contending that his past work as a paper carrier is not "substantial

14 gainful activity" under 20 C.F.R. § 416.975.

15    At the fourth step of the sequential evaluation process, the claimant has the

16 burden "to prove that he cannot perform his prior relevant work either as actually

17 performed or as generally performed in the national economy."  *Carmickle*, 533

18 F.3d at 1166 (*citing Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)

19 (internal quotation marks omitted)).  Past relevant work is work that was "done

20 within the last 15 years, lasted long enough for [claimant] to learn to do it, and was

substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a).

Self-employed persons are considered to perform "substantial gainful activity" if they: (1) rendered services 'that are significant to the operation of the business' and received a 'substantial income from the businesses.' 20 C.F.R. §§ 416.975(a)(1). Significant services in a business operated entirely by oneself are "any services that you render." 20 C.F.R. §§ 416.975(b). Substantial income is calculated by deducting "normal business expenses from … gross income to determine net income." 20 C.F.R. §§ 416.975(c). Net income is considered substantial if it meets the amounts set forth in 20 C.F.R. § 416.974. *Id.* In 2007, earnings averaging more than $900 per month ordinarily show that a person's work is substantial gainful activity; in 2009, earnings averaging more than $980 per month ordinarily show that a person's work is substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(ii)(B); Social Security, *Substantial Gainful Activity*, https://www.ssa.gov/oact/cola/sga.html. If a claimant's self-employment is not considered substantial gainful activity under that test, two other tests will also be

considered.  20 C.F.R. §§ 416.975(a).  Those are, (2) whether the work activity is "comparable to that of unimpaired individuals" in the community performing similar work, and (3) whether the work activity is "clearly worth" the amount shown in the earning guidelines."  20 C.F.R. §§ 416.975(a)(2)-(3).

Individuals who are not self-employed are considered to perform "substantial gainful activity" if their net income meets or exceeds the amount set forth in 20 C.F.R. § 416.974.  20 C.F.R. §§ 404.1574(a), 416.974(a).

Plaintiff alleges that his employment as a paper carrier was self-employment and therefore the ALJ should have conducted an analysis using the three tests discussed above to determine if Plaintiff's prior work was substantial gainful activity.  ECF No. 16 at 19.

In this matter, the ALJ's RFC is no longer supported given the Court's findings regarding the ALJ's consideration of the medical opinion evidence.  On remand, the Court should reconsider the medical opinion evidence, and the step four finding.[4]

---

[4] Resolution of this issue may require additional findings of fact as to the Plaintiff's net income, gross income, and reasonable business expenses.

**CONCLUSION**

After review, the Court finds that the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating these opinions, supported by substantial evidence.  Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 16) is **GRANTED**, and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g)

2.  Defendant's motion for summary judgment (ECF No. 17) is **DENIED**.

3.  An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE THE FILE.**

DATED this 27th day of September, 2016.

_S/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23